UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BORIS IOSELEV,

        Plaintiff,

vs.                                       Case No. 3:10-cv-1091-J-34MCR

IRINA SCHILLING and
ARKADY LYUBLINSKY

        Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendants' Motion for Summary Judgment

(Doc. 112) filed March 6, 2012 and Plaintiff's Motion for Summary Judgment (Doc. 113)

filed March 7, 2012.  Plaintiff filed a response in opposition to Defendants' motion on

March 22, 2012 (Doc. 115) and Defendants filed their response to Plaintiff's motion on

March 26, 2012 (Doc. 116).  On September 6, 2012, Judge Howard entered an Order

referring these motions to the undersigned for issuance of a report and

recommendation.  (Doc. 123).  Accordingly, the matter is now ripe for judicial review.

---

[1]  Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal.  See 28 U.S.C. §636(b)(1); Rule 72(b), Fed.R.Civ.P.; and Local Rule 6.02(a), United States District Court for the Middle District of Florida.

# I. **PROCEDURAL BACKGROUND**

This case has a long and convoluted history.[2]  On November 30, 2009, Plaintiff, who is proceeding pro se, filed a complaint in the District Court of New Jersey alleging breach of contract and a claim of conversion against the Defendants, Irina Schilling and Arkady Lyublinsky, who are also proceeding pro se.[3]  (Doc. 1).  This action is based on Plaintiff's allegations that on or about January 14, 2002, in New Jersey, where all of the parties lived at the time, Defendant Schilling offered Plaintiff and his wife (Schilling's mother) a life estate in a house in Florida in exchange for Plaintiff's assistance in developing real estate in Florida for investment purposes on Schilling's behalf.  Plaintiff accepted the offer, began performing duties relating to the real estate in Florida, and he and his wife moved into a house in Palm Coast Florida.  However, Plaintiff's wife died in December 2008 and shortly thereafter, Defendant Lyublinsky told Plaintiff that if he wished to continue living in the home, he would need to pay the full monthly mortgage payments for the home.  As Plaintiff was unable to afford the full mortgage payment, he was forced to leave the Palm Coast home and return to New Jersey.  Plaintiff further alleged that in March 2009, while he was in New Jersey preparing for the move from Florida, Defendants entered the Palm Coast home without authorization, and removed several items of personal property with a total alleged value of $14,000.

Defendants moved to dismiss the Complaint on January 14, 2010, contending it

---

[2]  Judge Howard thoroughly recounted that history in her September 22, 2011 Order (Doc. 89).  The undersigned will only summarize the events relevant to the instant motion.

[3]  Defendants, Irina Schilling and Arkady Lyublinsky, are Plaintiff's step-daughter and step-grandson, respectively.

failed to state a claim for relief, it was barred by the statute of frauds, and the New Jersey District Court lacked subject matter jurisdiction based upon Plaintiff's failure to establish the requisite amount in controversy of $75,000. (Doc. 5).  The New Jersey District Court denied Defendants' Motion to Dismiss on May 6, 2010.  (Doc. 23). Following New Jersey choice of law rules, the court determined Florida substantive law would apply to Defendants' Statute of Frauds defense raised in their Motion to Dismiss. Id. at 4–8.  The court also ruled that the arguments made in the Motion to Dismiss raised factual issues as to the intent of the parties, which could not be resolved on a motion to dismiss.  Id. at 8.  Further, the court determined it had subject matter jurisdiction because the amount in controversy, measured by the value of Plaintiff's claim to the real estate at issue, exceeded $75,000. Id. at 8-9.

Thereafter, on June 17, 2010, Plaintiff filed an amended complaint again alleging breach of contract and conversion claims and adding claims for constructive trust, promissory estoppel, unjust enrichment, and breach of the implied covenant of good faith and fair dealing.  (Doc. 28).  In response, on June 29, 2010, Defendants filed their answer, affirmative defenses, and a counterclaim against Plaintiff for breach of judicial trust and promise.  (Doc. 30).  Rather than answer the counterclaim, Plaintiff filed a motion to dismiss the counterclaim and a motion to strike the affirmative defenses.

While the motion to dismiss was pending, Plaintiff also filed a motion to have the requests for admissions he served on Defendants be deemed admitted as Defendants failed to respond to the requests.  (Doc. 35).  The New Jersey court terminated the motion as being unnecessary because it held "Rule 36 is self-executing" and "the nonresponsiveness of the defendants has provided the plaintiff with admissions for use

in these proceedings." (Doc. 37).

On September 15, 2010, the New Jersey court denied Plaintiff's Motion to Dismiss the Counterclaim. In so doing, the court construed the counterclaim to state a claim for breach of fiduciary duty under Florida law, in connection with Defendants' allegations that Plaintiff "abused" the power of attorney given him by Lyublinsky "in a self-dealing transaction to bind Mr. Lyublinsky to a contract to develop the property at 53 Port Royal for Plaintiff's own benefit." (Doc. 52). Again, Plaintiff did not file an answer to Defendant's counterclaim.

On November 12, 2010, Plaintiff filed a motion for summary judgment seeking judgment on his claims as set forth in the Amended Complaint. (Doc. 78). Shortly thereafter, on November 30, 2010, the New Jersey court transferred the case to the Middle District of Florida. (Doc. 80). On December 6, 2010, Defendants filed their response to Plaintiff's motion for summary judgment and a cross-motion for summary judgment on their counterclaim. (Doc. 84). On September 22, 2011, Judge Howard denied both motions, noting that neither motion was supported by sufficient, admissible evidence. (Doc. 89). Specifically, Judge Howard observed Plaintiff had relied upon alleged admitted Requests for Admissions by Defendant, as well as:

> his verified Amended Complaint to the extent it contains non-conclusory allegations based upon his personal knowledge, certified property records (which reflect no life-estate) and the affidavits of two friends who contend among other things that they witnessed the formation of the alleged oral contract, as well as Ioselev's alleged performance of the contract, to support his request for summary judgment on [these] claims.

(Doc. 89, p.11). Further, to oppose Defendants' motion for summary judgment, Plaintiff

4

simply relied on a certified deed.  Id.  Defendants, on the other hand, submitted no admissible evidence to support their motion or to oppose Plaintiff's.  Id. at pp. 11-12. Accordingly, Judge Howard denied both motions without prejudice and provided the parties with information regarding summary judgment practice.  Additionally, Judge Howard ruled that Defendants' admissions to many of the requests for admission were withdrawn and deemed denied.  Id. at p. 19.

In March 2012, both sides filed the instant motions for summary judgment.

## II.  FACTS

As the majority of the facts in this case are in dispute, the undersigned will report the facts as alleged by each side and then in analyzing the grounds for summary judgment in each motion, will view the evidence in the light most favorable to the non-moving party.  See White v. Mercury Marine, Div. of Brunswick, Inc., 129 F.3d 1428, 1430 (11th Cir. 1997).

## A.     Plaintiff's Factual Allegations[4]

Plaintiff alleges that on or about January 14, 2002, he was attending a party celebrating the "old Russian New Year" in New Jersey (where all of the parties lived at the time).  (Doc. 28).  During the party, Defendant Schilling offered Plaintiff and his wife (Schilling's mother) a life estate in a house in Florida in exchange for Plaintiff's

---

[4]     Plaintiff's Motion for Summary Judgment (Doc. 113) is supported by several unauthenticated deeds; an unsigned "certificate" from Defendant Schilling; an unauthenticated settlement statement for a property of Defendant Schilling's; an unauthenticated capital gains and losses form for Paul & Irina Schilling; and affidavits from Plaintiff, David Wallingford, Guennadi Kisselev, and Lidiya Ryabinina. (See Doc. 113, Ex. 1). Plaintiff's  Response to Defendants' Motion for Summary Judgment (Doc. 115) is supported by the affidavit of Igor Shames.  In ruling on this Motion, the Court also considered Plaintiff's verified First Amended Complaint (Doc. 28).

assistance in developing real estate in Florida for investment purposes on Schilling's behalf.  Id.  Plaintiff alleged Schilling told him during the conversation that he would be responsible for paying only the taxes and utilities on the house.  Id.  Plaintiff accepted her offer and began traveling to Florida to purchase several properties in Schilling's name and to oversee the development of the properties.  Id.

Subsequently, in 2003, Schilling transferred ownership of her Florida properties to her son, Lyublinsky, and Lyublinsky orally assured Plaintiff he would honor Schilling's alleged oral promise of a life estate in exchange for services.  Id.  Plaintiff contends he then hired a builder and supervised the construction of a house at 53 Port Royal Drive, Palm Coast, Florida.  Id.  Plaintiff and his wife moved into this house in August 2005, where they lived until her death in December 2008.  Id.  After Plaintiff's wife's death, Lyublinsky allegedly demanded Plaintiff pay the full amount due on the mortgage for the home at 53 Port Royal Drive if Plaintiff wished to continue living there.  Id.  As Plaintiff was unable to afford the full mortgage payment, he was forced to leave the home and return to New Jersey.  Id.  Plaintiff further alleged that in March 2009, while he was in New Jersey preparing for the move from Florida, Defendants entered the home at 53 Port Royal Drive, without authorization, and removed several items of personal property, including a mink coat, jewelry, and other items, with a total alleged value of $14,000.  Id.

**B.    Defendants' Factual Allegations**[5]

Not surprisingly, Defendants have filed affidavits detailing a very different version of events.  (See Doc. 116, Exs. 1 and 2).  According to Defendants, neither ever promised to purchase a home for Plaintiff or his wife to reside in for the rest of their lives.  Instead, Defendant Lyublinsky claims he gave Plaintiff power of attorney in 2003 to have a home built on only one property at 144 London Drive in Palm Coast, Florida.  (Doc. 116, Ex. 1).  Lyublinsky alleges that in December 2003, Plaintiff made arrangements for a second home to be constructed at 53 Port Royal Drive, without Lyublinsky's knowledge.  Id.  Lyublinsky was not aware of the home being constructed at 53 Port Royal Drive until May 2005, when he received a telephone call from the mortgage broker, David Wallingford, requesting additional information in order to process the loan.  Id.  Lyublinsky claims he and his wife got into a heated argument with Plaintiff regarding the home and Lyublinsky revoked the power of attorney.  Id.  After Lyublinsky's grandmother (Plaintiff's wife) begged him not to attempt to back out of the deal with the builder, Lyublinsky relented and obtained a mortgage for the home at 53 Port Royal Drive.  Id.  It was Lyublinsky's intention to attempt to sell the home within a

---

[5]    Defendants' Motion for Summary Judgment (Doc. 112) is supported by several unauthenticated documents: a check from Defendant Lyublinsky allegedly representing the taxes for the home at 53 Port Royal Drive, tax returns for Lyublinsky showing the income he reported from the home at 53 Port Royal Drive, copies of the contract for the construction of the home at 53 Port Royal Drive, W-2's for Plaintiff showing income received from Defendant Schilling's company, forms showing Shilling's company paid for Plaintiff's medical insurance, and the police report for the alleged burglary at 53 Port Royal Drive.  Additionally, Defendants included several affidavits from: Gennady Kisselev, Anastasia Lyublinsky (Defendant Lyublinsky's wife), Rita Rubin,  Charles Schilling (Defendant Schilling's son), Paul Schilling (Defendant Schilling's husband), Defendant Lyublinsky, and Natalia Gallo.  Defendants' Response to Plaintiff's Motion for Summary Judgment (Doc. 116) is supported by affidavits from Defendants Lyublinsky and Schilling.  (See Doc. 116, Exs. 1 and 2).

year.  Id.  After the home was completed, Plaintiff approached Lyublinsky with a solution

to his problem.  Plaintiff suggested that he and his wife could move into the home at 53

Port Royal Drive and rent it for a couple of years while property values increased and

then Lyublinsky could sell it and make a profit.  Id.  Lyublinsky agreed.  However, in

2005, when Plaintiff and his wife moved into the home, Plaintiff informed Lyublinsky that

he could not afford the entire $1,200.00 rent and instead could only pay $750.00 each

month.  Id.

Lyublinsky moved down to Palm Coast in 2006 in order to manage his real estate

investments himself.  Id.  In 2007, with Plaintiff's knowledge, Lyublinsky put the home at

53 Port Royal Drive on the market.  According to Lyublinsky, Plaintiff even offered to

cooperate with showings for the home.  Id.  Unfortunately, later that year, Lyublinsky

learned his grandmother was very ill with cancer and the prognosis was not good.

Therefore, he took the house off the market so she could remain in it without the stress

of showings.  Id.  After his grandmother died in December 2008, Lyublinsky approached

Plaintiff in January 2009 to inform him that Lyublinsky could no longer afford to allow

Plaintiff to live in the home at 53 Port Royal Drive without paying the full amount of the

monthly mortgage payment.  Id.  Lyublinsky and his wife offered to allow Plaintiff to live

with them and Defendant Schilling also offered to allow Plaintiff to live in her home.  Id.

Plaintiff responded that he would think about it.  Id.

Thereafter, Plaintiff asked Lyublinsky and his wife to come over so they could

discuss the home.  Id.  Plaintiff produced a document granting himself a life estate in the

home at 53 Port Royal Drive and told Lyublinsky if he did not sign it, Plaintiff would call

the police and report that Lyublinsky and Schilling broke into his home and stole

8

objects.  Id.  Lyublinsky refused.  Apparently, Plaintiff kept his promise and reported to the police that a break-in had occurred.  Id.

## III.  DISCUSSION

### A.  Standard of Review for Motions for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed.R.Civ.P.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-movant.  See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)).  In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).  The inferences, however, must be plausible.  See Griesel v. Hamlin, 963 F.2d 338, 341 (11th Cir. 1992); Mize, 93 F.3d at 743.  If a reasonable juror could infer from the evidence presented the conclusions upon which the non-moving party depends, the motion for summary judgment should be denied.  Alphin v. Sears, Roebuck & Co., 940 F.2d 1497, 1500 (11th Cir. 1991).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.

9

1991).  "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted).

**B.    Defendants' Motion for Summary Judgment (Doc. 112)**

In their Motion for Summary Judgment, Defendants ask the Court to grant them summary judgment on Plaintiff's claims.  Defendants provide numerous grounds to support their request.  Specifically, Defendants believe Plaintiff's breach of contract and promissory estoppel claims are barred by the statute of frauds.  Additionally, Defendants take the position that because of his familial relationship with them, Plaintiff cannot sue for payment of the services he provided.  Defendants also argue Plaintiff's unjust enrichment claim must fail because they paid Plaintiff for his services and because Plaintiff cannot show he actually conferred a benefit upon Defendants.  Further, Defendants believe Plaintiff's claims should be dismissed because Plaintiff never had a life estate in the home at 53 Port Royal Drive and instead, was simply renting the property.  Finally, Defendants believe Plaintiff's claims are barred by the doctrines of waiver, unclean hands, and laches.  The undersigned will address each of these contentions.

**1.    Statute of Frauds**

Defendants argue summary judgment should be entered in their favor on Plaintiff's breach of contract and promissory estoppel claims because said claims are

barred by the statute of frauds.  Plaintiff responds that the statute of frauds does not

apply because he fully performed the contract.

Section 725.01, Florida Statutes (2012) ("the statute of frauds"), provides in

pertinent part:

> No action shall be brought . . . upon any contract for the sale
> of lands, tenements or hereditaments, or of any uncertain
> interest in or concerning them, or for any lease thereof for a
> period longer than 1 year, . . ., unless the agreement or
> promise upon which such action shall be brought, or some
> note or memorandum thereof shall be in writing and signed
> by the party to be charged therewith or by some other
> person by her or him thereunto lawfully authorized.

The Court must first determine whether the statute of frauds applies to the contract at

issue in this case.  As the alleged oral contract dealt with an interest in land, it is

covered by the statute of frauds and Plaintiff's cannot maintain any claims based on the

contract unless the promise was memorialized by a writing signed by one of the

Defendants.  As there is no writing, the instant action on the contract cannot be

maintained unless an exception to the statute of frauds applies.

Plaintiff argues the statute of frauds does not apply in the instant case because

he either fully performed or partly performed his side of the bargain.  Plaintiff is correct

that full or partial performance of an oral contract takes the contract outside the statute

of frauds.  See Ala v. Chesser, 5 So.3d 715, 719 (Fla. 1st DCA 2009) (citing W.B.D., Inc.

v. Howard Johnson Co., 382 So.2d 1323, 1327 (Fla. 1st DCA 1980) ("When an oral

contract has been fully performed by one party, the statute of frauds may not be

employed as a defense, even though the subject matter of the contract is the

conveyance of an interest in land."); McGee v. Emmer Dev. Corp., 541 So.2d 1292,

1294 (Fla. 1st DCA 1989) ("Partial or complete performance removes an agreement from the statute of frauds irrespective of whether such an agreement contains as the subject the conveyance of land.") (quoting Futch v. Head, 511 So.2d 314, 319 (Fla. 1st DCA 1987))); and Elliott v. Timmons, 519 So.2d 671, 672 (Fla. 1st DCA 1988) ("It is well-established that partial or complete performance removes an oral contract from the statute of frauds.").  However, the doctrines of full and part performance only apply to actions seeking equitable relief.  See Ala, 5 So.3d at 719-20.  Accordingly, Plaintiff's claims for damages based on the breach of contract and promissory estoppel claims[6] are barred by the statute of frauds and the undersigned will recommend summary judgment be granted in favor of Defendants on them.

As Plaintiff also seeks equitable relief in the form of specific performance and/or a constructive trust, the Court must examine whether the doctrines of full and/or part performance are applicable to the instant case.  To support his position, Plaintiff cites to the Florida Supreme Court case of Cottages, Miami Beach, Inc. v. Wegman, 57 So.2d 439 (Fla. 1952).  In Cottages, a woman sued for specific performance of an alleged oral agreement between her and her father whereby, if she would move to Miami Beach and assist her father in the operation of his business, with which he planned to purchase some real property, he would vest her with a one-half interest in the property.  Id. at 440.  The plaintiff moved from New York with her son and began working with her father.  Id.  The court determined the plaintiff's part performance of the alleged oral

---

[6] "The doctrine of promissory estoppel cannot be used to circumvent the statute of frauds." Harris v. School Bd. of Duval County, 921 So.2d 725, 735 n.9 (Fla. 1st DCA 2006) (citing Tanenbaum v. Biscayne Osteopathic Hosp., Inc., 190 So.2d 777, 778-79 (Fla. 1966)).

contract took it out of the statute of frauds.  Id. at 441.  In so holding, the court

observed:

> The general rule is that the mere rendition of services by the
> plaintiff in reliance upon the defendant's parol promise to
> convey real estate to him, is not a sufficient part
> performance to warrant the specific enforcement of the oral
> agreement, where the services are capable of adequate
> pecuniary measurement and compensation.  There is also
> the rule that the rendition of services by the promisee in
> consideration of the promisor's oral pledge to convey an
> interest in land is ordinarily treated as equivalent to payment
> of the consideration of the contract, and, while this is not in
> itself sufficient part performance, the rendition of services
> together with possession of the property to which the
> contract relates is a sufficient part performance to take the
> contract out of the statute.

Id.  The court went on and noted that Florida subscribed to the second rule as the

Supreme Court had previously determined "that the taking of possession and, in

addition, the payment of some part or all of the consideration is such part performance

as will take an oral contract out of the Statute of Frauds."  Id. (citing Pedrick v. Vidal, 95

Fla. 952, 116 So. 857 (Fla. 1928); Clark & Lewis v. Gardner, 91 Fla. 1059, 109 So. 192

(Fla. 1926); and Demps v. Hogan, 57 Fla. 60, 48 So. 998 (Fla. 1909)).

Accordingly, in order to establish part performance sufficient to take an oral

contract out of the operation of the statute of frauds, the promissee must show that he

was placed in possession of the property involved and "the existence of one or more

other pertinent factors."  Avery v. Marine Bank & Trust Co., 216 So.2d 251, 253 (Fla. 2nd

DCA 1968).  The other pertinent factors include where the prospective grantee:

(1) "paid the purchase money, erected a dwelling house on the land, enlarged the

enclosures [and] set out many fruit trees;" (2) "paid a part of the purchase price;"

13

(3) "substantially 'improved the property;'" or (4) left her home in New York and moved to Florida, "took possession and rendered services in managing and operating the property, which services were not 'capable of adequate pecuniary measurement and compensation.'" Id. at 253-54 (internal citations omitted).

In the instant case, Plaintiff alleges and Defendants do not refute, Plaintiff was in possession of the property at 53 Port Royal Drive from August 2005 until sometime in the spring of  2009, after Defendants told him he would need to be responsible for making the full mortgage payments on the property.  (Doc. 113, Ex. 1).  Accordingly, Plaintiff has satisfied the first part of the test.  As for the "other pertinent factors," Plaintiff alleges he left his home in New Jersey and moved to Florida; he performed numerous services for Defendants with respect to their real estate venture in Florida; he performed those services in reliance on Defendants' promise that he and his wife could have the house for their lifetimes; and he improved the property by constructing a built-in entertainment center, remodeling the living room, and performing several landscaping projects.  (Doc. 113, p.6).  While Defendants dispute Plaintiff's claims regarding his services as they allege he was paid for the work (an allegation Plaintiff vehemently denies), they do not respond to his other claims   Accordingly, the undersigned believes summary judgment on Plaintiff's equitable claims based on the statute of frauds would be inappropriate.  Fact issues still remain regarding whether other pertinent factors exist such that Plaintiff's part performance would take the oral contract out of the statute of frauds.

## 2. Familial Relationship

Next, Defendants argue Plaintiff's relationship with them, coupled with the lack of

14

a written agreement, prohibits Plaintiff from suing them for the services provided.  To support this allegation, Defendants cite McLane v. Musick, 792 So.2d 702 (Fla. 5th DCA 2001).  The facts in McLane, however, are distinguishable from the instant case.  In McLane, the plaintiff was suing the executor of his deceased, live-in girlfriend's estate.  The plaintiff claimed he and his girlfriend orally agreed that each would execute a will in favor of the other.  Id. at 703.  However, prior to doing so, the girlfriend was diagnosed with terminal cancer and died.  Id.  While she was ill, the plaintiff paid for her medical expenses and provided personal care and services.  Id.  In his complaint, the plaintiff sought payment of $21,000.00 to compensate him for the personal care he rendered his girlfriend during her terminal illness.  Id. at 704.  The court denied plaintiff any recovery on the basis that no promise to pay for these services would be implied as they were "rendered by and for members of the same family or relatives who live together" and without an "express contract or promise to pay, no right of action accrues for the services, especially where the relationship evinces the mutuality or reciprocity of services, benefits and duties, which characterize normal family life."  Id. at 705.  In the instant case however, Plaintiff alleges an express promise on the part of Defendants and therefore, the Court need not infer a contract.  Accordingly, summary judgment on this basis should be denied.

### 3.   Unjust Enrichment

Defendants argue Plaintiff's claim for unjust enrichment must also be dismissed.  The elements of a cause of action for unjust enrichment are: (1) the plaintiff conferred a benefit upon the defendant, who has knowledge of that benefit; (2) the defendant accepted and retained the conferred benefit; and (3) under the circumstances, it would

15

be inequitable for the defendant to retain the benefit without paying for it.  N.G.L. Travel

Assocs. v. Celebrity Cruises, Inc., 764 So.2d 672 (Fla. 3rd DCA 2000).  Defendants first

argue the unjust enrichment claim must fail as they paid Plaintiff for his services and

"[u]njust enrichment cannot exist where payment has been made for the benefit

conferred."  (Doc. 112, p.3).  To support the claim that they paid Plaintiff for his services,

Defendants have attached unauthenticated copies of W2 forms issued to Plaintiff from

Defendant Schilling's company, Global Computing Associates, from 2000, 2001, and

2002.  (Doc. 112, Ex. 1).  Plaintiff responds that the work he performed for Global

Computing Associates did not include any of the tasks he performed with respect to the

real estate in Florida.  (Doc. 115, p.8).  Additionally, Plaintiff points out that he allegedly

provided services for Defendants from 2002 through 2009.  Id.  As genuine issues of

material fact exist, summary judgment cannot be entered on Defendants' claim that they

paid for the services performed by Plaintiff.

Next, Defendants claim Plaintiff failed to provide any evidence that Defendants

were enriched by Plaintiff's services.  (Doc. 112, p.5).  They argue Plaintiff has simply

speculated about any profits made by Defendants and in reality, Defendants argue they

are in a worse financial situation than they were before Plaintiff's services.  Id.

However, Defendants have similarly failed to present sufficient evidence showing they

did not obtain any sort of benefit from Plaintiff's alleged services.  Indeed, Defendants'

argument fails to consider that Plaintiff's alleged actions as their agent: performing

repairs, cleaning the rental homes, and supervising construction; ostensibly conferred

some benefit to them.   Moreover, whether Defendants made any sort of profit on their

real estate venture is hotly contested by the parties.  For these reasons, Defendants

have failed to show they are entitled to summary judgment on Plaintiff's unjust enrichment claim.

### 4.    Life Estate

Defendants argue Plaintiff's claims should be dismissed because Plaintiff never had a life estate in the home at 53 Port Royal Drive.  Instead, Defendants argue Plaintiff and his wife paid rent in the amount of $750 a month.  This argument is simply a dispute with Plaintiff's version of the facts and does not warrant entry of summary judgment.


### 5.    Waiver

Defendants take the position that Plaintiff's claims are barred by the doctrine of waiver in that Plaintiff voluntarily left the property at 53 Port Royal Drive.  "'The elements of waiver are: (1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right.'" Husky Rose, Inc. v. Allstate Ins. Co., 19 So.3d 1085, 1088 (Fla. 4th DCA 2009) (quoting Leonardo v. State Farm Fire & Cas. Co., 675 So.2d 176, 179 (Fla. 4th DCA 1996)).  Defendants' position fails to support a finding of waiver.  Defendants admit they offered Plaintiff the opportunity to stay in the home and pay the full mortgage monthly payment or to buy the house by paying the full mortgage.  However, according to Plaintiff, he was permitted to stay in the home without paying the mortgage so long as he paid the utilities and taxes.  This is the right Plaintiff is now seeking to enforce.  Therefore, Defendants have failed to satisfy the first element for waiver: the existence at the time of the waiver of a right, privilege, advantage, or

benefit which may be waived.  If Plaintiff were now trying to enforce Defendants' offer for him to stay in the house if he assumed the mortgage payments, waiver would be applicable.  However, based on Plaintiff's current allegations, Plaintiff's leaving did not amount to a waiver and summary judgment should not be entered on the basis of waiver.

### 6.    Unclean Hands

Defendants take the position that Plaintiff's claims are barred by the doctrine of unclean hands.  Specifically, Defendants argue Plaintiff: (1) abused the power of attorney provided by Defendant Lyublinsky and fraudulently induced Defendant to sign for a mortgage at 53 Port Royal Drive; (2) filed a false police report to extort Defendants to grant him a life estate in the home at 53 Port Royal Drive; (3) harassed, emotionally blackmailed, and manipulated Defendants; and (4) stole documents from Defendants' homes.  Defendants have failed to produce sufficient evidence to support these allegations and in any event, Plaintiff adamantly disputes them.  Accordingly, summary judgment on the basis of the doctrine of unclean hands is not appropriate.

### 7.    Laches

Finally, Defendants argue Plaintiff's claims are barred by the doctrine of laches. Defendants contend Plaintiff waited too long to institute this litigation, making it difficult for Defendants to locate witnesses and documents.  This claim is without merit.  Plaintiff filed the instant litigation back on November 30, 2009.  According to Plaintiff, Defendants did not breach the agreement and he did not suffer any damages until May 2009, when he was forced to move out of the house at 53 Port Royal Drive.  Plaintiff

18

filed the instant litigation six months later.  Accordingly, to the extent Defendants seek summary judgment on the basis of laches, it should be denied.

In sum, the undersigned recommends granting Defendants' Motion for Summary Judgment with respect to Plaintiff's claims for damages based on breach of contract and/or promissory estoppel.  In all other respects, the undersigned recommends the Motion be denied.

**C.** **Plaintiff's Motion for Summary Judgment (Doc. 113)**

In his Motion for Summary Judgment, Plaintiff asks the Court to both grant summary judgment in his favor on Defendants' counterclaim and to grant summary judgment on his own claims.  Plaintiff believes he is entitled to summary judgment on Defendants' counterclaim because it is barred by the statute of limitations.  Additionally, Plaintiff argues Defendants have failed to provide any evidence supporting their demands.  Finally, Plaintiff asks the Court to enter judgment in his favor on his breach of contract, unjust enrichment, promissory estoppel, and breach of the implied covenant of good faith and fair dealing claims.  (Doc. 113).  The Court will address each of these claims.[7]

**1.** **Dismissal of Defendants' Counterclaim**

As decided by the court in New Jersey, Defendants' counterclaim alleges breach of fiduciary duty.  (Doc. 52, p.6).  Specifically, Defendants allege Plaintiff abused the power of attorney granted to him by Lyublinsky by entering into a contract to develop

---

[7]  The Court also notes that in their response to this Motion, Defendants asked the Court to strike the affidavits supporting Plaintiff's Motion. The undersigned will also address this request.

the property at 53 Port Royal Drive for Plaintiff's own benefit.  Plaintiff argues he is entitled to summary judgment on this claim because it is barred by the statute of limitations.

Florida Statutes § 95.11(3) provides a four year statute of limitation period for actions based on breach of fiduciary or other statutory duties.  The present counterclaim for breach of fiduciary duty was filed by Defendants on June 29, 2010.  (Doc. 30).  Accordingly, "all alleged acts or omissions that occurred prior to [June 29, 2006] are barred and cannot form a basis for a claim in this case."  Conboy v. Black Diamond Properties, Inc., No. 5:08-cv-236, 2010 WL 2944374, *14 (M.D. Fla. July 23, 2010).  As the main allegation of Defendants' counterclaim is that Plaintiff contracted for a home to be built at 53 Port Royal Drive in December of 2003, if the statute of limitations is applied, their claim must fail.

Defendants argue their breach of fiduciary claim is a compulsory counterclaim and as such, it is not barred by the statute of limitations.  Defendants are correct that under Florida law, "a compulsory counterclaim in recoupment permits the recovery of an affirmative judgment even though barred as an independent cause of action by the running of the statute of limitations."  Allie v. Ionata, 503 So.2d 1237, 1239 (Fla. 1987); see also Blasland, Bouck & Lee, Inc. v. City of North Miami, 283 F.3d 1286, 1301 (11th Cir. 2002).  Accordingly, the undersigned must determine whether Defendants' breach of fiduciary duty claim is a counterclaim in recoupment.

As the Florida Supreme Court explained:

> A plea of recoupment is purely defensive.  It rests on the principle of allowing evidence in reduction of the plaintiff's damages to be introduced, where the plaintiff sues on a

20

> contract consisting of mutual stipulations made at the same
> time, the defendant being allowed to defend against the
> plaintiff's claim for damages by recouping his own damages
> that are alleged to have arisen by reason of plaintiff's breach
> of another part of the same contract, whether the contract
> consists of one or several parts.

Marianna Lime Products Co. v. McKay, 109 Fla. 275, 281, 147 So. 264, 266 (Fla. 1933) (internal citations omitted).  Further, "a counterclaim is compulsory when it arises out of the same transaction or occurrence as the claim it is countering."  Blasland, 283 F.3d at 1301 (citing Londono v. Turkey Creek, Inc., 609 So.2d 14, 19 (Fla. 1992)).  As in the Blasland case, both Plaintiff's claims and Defendants' counterclaim arose out of the same alleged oral contract.  Additionally, Defendants' breach of fiduciary duty count is simply a "claim for damages by recouping [their] own damages that are alleged to have arisen by reason of plaintiff's breach of another part of the same contract."  Marianna Lime Products Co., 147 So. at 266    Accordingly, the undersigned believes Defendants' counterclaim is a compulsory counterclaim seeking recoupment.

As the Allie court observed, the purpose of the statute of limitations is to protect parties from having to defend against stale claims brought by plaintiffs who have slept on their rights.  Allie, 503 So.2d at 1240.  However, in situations like the present matter, where a plaintiff seeks affirmative relief through a complaint, he "effectively asserts that he is prepared to prosecute all aspects of that matter."  Id.  As he has "sufficient knowledge of the facts to support his complaint and sufficient evidence to prosecute that complaint, he must be prepared to defend against any affirmative defenses arising therefrom."  Id.  Accordingly, Plaintiff cannot now "profess to be surprised by or prejudiced by affirmative defenses or compulsory counterclaims that stem from" the

allegations in his complaint.  Id.  Therefore, the undersigned believes Defendants'
counterclaim is not barred by the statute of limitations.

Plaintiff also asks that summary judgment be entered against Defendants on
their counterclaim because Defendants did not provide any support for their alleged
damages during discovery.  Plaintiff claims Defendants did not provide him with any
evidence to support their claims for $160,000.00, the amount of the mortgage;
$18,000.00 for the money Lyublinsky allegedly provided to Plaintiff while he resided at
53 Port Royal Drive; and $100,000.00 for punitive damages.  (Doc. 113, pp. 13-14).
The Court finds this argument to be without merit.  As noted above, the party seeking
summary judgment bears the initial burden of demonstrating to the Court, by reference
to the record, that there are no genuine issues of material fact to be determined at trial.
It is only after the moving party has discharged this burden, that the non-moving party is
required to go beyond the pleadings and designate specific facts showing that there is a
genuine issue for trial.  As Plaintiff has failed to produce any record evidence showing
that Defendants have suffered no damages as a result of his alleged acts, he has not
met his initial burden and summary judgment is inappropriate.

## 2.    Judgment on Plaintiff's Claims

In his Motion, Plaintiff also asks that summary judgment be entered in his favor
on his breach of contract, unjust enrichment, promissory estoppel, and breach of the
implied covenant of good faith and fair dealing claims.  Plaintiff takes the position that
because he has the affidavits of two individuals who overheard the contract made
between Plaintiff and Defendant Schilling, he is entitled to summary judgment in his
favor.  However, as noted above, Defendants deny the existence of any contract or

22

promise to allow Plaintiff to live in the home at 53 Port Royal Drive for life and have provided affidavits alleging the same.  Accordingly, there are genuine issues of material fact regarding Plaintiff's claims and summary judgment is not appropriate.

### 3.  Striking Plaintiff's Affidavits

Finally, the undersigned notes that in their response to Plaintiff's Motion for Summary Judgment, Defendants ask that the affidavits of Guannadi Kisselev, Plaintiff, Lidiya Ryabinina, and David Wallingford be stricken as they contain false statements. (Doc. 116).  The undersigned recommends denial of this request for numerous reasons. First, the undersigned did not consider the affidavits of any of the individuals other than Plaintiff in rendering this Report and Recommendation and therefore, Defendants' request is moot.  Further, in ruling on a motion for summary judgment, the court may not weigh conflicting evidence or make credibility determinations, however, where an affidavit is proffered to resist summary judgment and flatly contradicts earlier sworn testimony without valid explanation, the court has discretion to disregard the inconsistent affidavit or strike it as a sham.  See Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1237 (11th Cir. 2010).  This rule is to be applied sparingly though, due to "'the harsh effect it may have on a party's case.'"  Id. (quoting Allen v. Bd. of Pub. Educ. for Bibb County, 495 F.3d 1306, 1316 (11th Cir. 2007)).  Therefore, prior to disregarding an affidavit, a court must first "'find some inherent inconsistency between an affidavit and a deposition.'"  Id.  As Defendants have pointed to no alleged inconsistencies, the undersigned recommends denial of Defendants' request to strike any of the affidavits.

Accordingly, after due consideration, it is respectfully

**RECOMMENDED**:

1.      Defendants' Motion for Summary Judgment (Doc. 112) be **GRANTED in part** insofar as Plaintiff's claims for damages pursuant to his breach of contract and promissory estoppel claims are barred by the statute of frauds.  The remainder of the Motion should be **DENIED**.

2.      Plaintiff's Motion for Summary Judgment (Doc. 113) should be **DENIED**.

3.      Defendants' request to strike Plaintiff's affidavits contained in their response to Plaintiff's Motion for Summary Judgment (Doc. 116) should be **DENIED**.


**DONE AND ENTERED** in Chambers in Jacksonville, Florida this __30th__ day of October, 2012.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

<u>Pro</u> <u>Se</u> Parties

The Honorable Marcia M. Howard
United States District Judge