**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BORIS IOSELEV,

        Plaintiff,

-vs-                                            Case No. 3:10-cv-1091-J-34MCR

IRINA SCHILLING and ARKADY
LYUBLINSKY,

        Defendant.

_____

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This action is before the Court for the entry of findings of fact and conclusions of law as to Plaintiff Boris Ioselev's breach of contract claim for specific performance against Defendant Irina Schilling. Beginning on August 27, 2013, the Court held a four-day jury trial at the conclusion of which, on August 30, 2013, the jury returned special interrogatories regarding Plaintiff's equitable claims and a verdict resolving the parties' legal claims. See Special Interrogatories and Verdict Form (Doc. No. 176; Verdict). Following the jury's verdict, the parties submitted proposed findings of fact and conclusions of law with respect to the remaining equitable claim seeking specific performance. See Defendant's Proposed Findings of Fact Conclusions of Law (Doc. No. 189; Defendant's Proposed Findings) and Plaintiff's Proposed Findings of Fact and Conclusions of Law (Doc. No. 190; Plaintiff's Proposed Findings). Having reviewed the pleadings, examined the evidence, observed the witnesses, and considered the arguments of counsel as well as the remainder of the record, the Court makes the following findings of fact and conclusions of law as required by Rule 52(a), Federal Rules of Civil Procedure (Rule(s)).

**I.     The Claims**

Plaintiff, Boris Ioselev (Ioselev), filed this action primarily seeking to enforce an oral promise to provide him with a life estate in a home in Florida in exchange for property management services.  In his First Amended Complaint (Doc. No. 28; Complaint), Ioselev asserted claims for both legal and equitable relief against Defendants Irina Schilling (Schilling) and Arkady Lyublinsky (Lyublinsky).  Specifically, Ioselev presented claims for breach of contract (Count One), conversion (Count Two), constructive trust (Count Three), promissory estoppel (Count Four), unjust enrichment (Count Five), and breach of implied covenant of good faith and fair dealing (Count Six).  In response, Lyublinsky asserted a counterclaim against Ioselev for breach of fiduciary duty.  See Answer of Defendants, Irina Schilling and Arkady Lyublinsky to Plaintiff's Complaint with Affirmative Defenses (Doc. No. 30; Counterclaim).[1]  Prior to trial, the Court granted summary judgment as to Ioselev's claims for money damages asserted in Counts One and Four, and dismissed Count Six without prejudice.  See Order (Doc. No. 131) at 13.  The Court denied summary judgment as to Ioselev's remaining claims and denied Ioselev's motion for summary judgment as to the Counterclaim.  See id.

As the claims remaining for trial included both legal and equitable claims, the parties were entitled to a jury trial as to the legal claims and any common questions of law and fact

---

[1] Although both Defendants originally asserted counterclaims against Ioselev, the New Jersey District Court granted in part and denied in part Ioselev's motion to dismiss, construing the surviving claim solely as one for breach of fiduciary duty based on Ioselev's alleged abuse of the power of attorney Lyublinksy had given him.  See Order (Doc. No. 52).  Therefore, this Court determined that only Lyublinsky could assert this claim, and any allegations related to Schilling's claim for damages were dismissed.  See Order (Doc. No. 131) at 4 n.2.

implicated by the equitable claims. See Lytle v. Household Mfg., Inc., 494 U.S. 545, 550 (1990) ("When legal and equitable claims are joined in the same action, 'the right to jury trial on the legal claim, including all issues common to both claims, remains intact.'" (quoting Curtis v. Loether, 415 U.S. 189, 196, n.11 (1974))); see also Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510-11 (1959); Hensley v. E.R. Carpenter, Co., 633 F.2d 1106, 1110, n.5 (5th Cir. 1980)[2] ("It is well established, however, that if a party asserts a legal claim, he is entitled to a jury determination of the factual issues related to that claim even if those issues also relate to equitable claims brought by that party or equitable counterclaims brought by the opposing party."). Accordingly, the case proceeded to trial before a jury. During the charge conference, Ioselev announced through counsel that he was withdrawing the claim for conversion against Lyublinksy and was proceeding with that claim against Schilling only. Additionally, once the case was submitted to the jury, Ioselev announced that he was also dropping his constructive trust claim in Count Three. Ultimately, the jury returned factual findings as to the equitable claims for specific performance and promissory estoppel as well as a verdict on the legal claims of unjust enrichment, conversion, and breach of fiduciary duty.[3]

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[3] At trial, there was some dispute about whether a claim for unjust enrichment was a legal or equitable claim. However, the Court concluded that the jury should resolve this claim based on Florida legal authority. See Della Ratta v. Della Ratta, 927 So. 2d 1055, 1060 (Fla. 4th DCA 2006). In Della Ratta, the court explained:

> In Florida, all implied contract actions, including unjust enrichment, were part of the action of assumpsit, which was an action at law under the common law. Although some Florida courts have described quasi contracts as being "equitable in nature," "the term

## II.     Relevant Evidence[4] at Trial and Jury Findings

This case involves a family dispute, as Ioselev, who married Schilling's mother, was Schilling's stepfather and the step-grandfather of Schilling's son Lyublinsky. Ioselev testified at trial, recounting a conversation with Schilling during a party at her home on the night of the Russian New Year in January of 2002. In that conversation, Ioselev asserts Schilling promised to build him a home on a property in Florida, and let him live there with his wife for the rest of the their lives in exchange for Ioselev's buying, selling, repairing, and remodeling real estate properties in Florida for investments. Ioselev immediately began performing his end of the agreement, obtaining a real estate license in New Jersey. In May of 2002, Ioselev traveled to Palm Coast, Florida to visit properties, work with builders, arrange contracts, and purchase properties, all the while communicating via telephone with Schilling. According to Ioselev, Schilling informed him that she wanted to buy empty lots and build a home on one of the lots. As a result of his efforts, Schilling ultimately purchased undeveloped lots at the following addresses: 39 Pheasant Drive, 65 Pilgrim Drive, 67 Pilgrim Drive, 53 Port Royal Drive, and 119 Boulder Rock Drive. See Plaintiff's Exhibits 1, 3, 7, 9, 131. Ioselev, acting on Schilling's behalf, entered into a contract with a builder, Mercedes Homes, to build a home on 119 Boulder Rock Drive. See Plaintiff's Exhibit 65.

---

has been used in the sense of 'fairness' to describe that quality which makes an enrichment unjust, and not as a reference to the equity side of the court."

Id. at 1060 n.2 (internal citations omitted); see also Florida Standard Jury Instructions - Contract and Business Cases - 416.7 Contract Implied in Law (quoting same).

[4]    In reviewing the testimony, the Court focuses only on the evidence necessary to resolve the specific performance claim.

By the time Ioselev took his third trip to Palm Coast,[5] some time in June or July 2003, Schilling had transferred all of her properties, with the exception of 119 Boulder Rock Drive, to her son Lyublinsky. See Plaintiff's Exhibits 96, 97, 99. On that third trip, Ioselev explained he was looking into building a home on one of the empty lots. Specifically, Ioselev contemplated building a house at 53 Port Royal Drive, and understood that to be the home in which he would have a life estate.[6] In February of 2006, after the builder completed construction on the home, Ioselev and his wife moved into the residence.[7]

Some years later, in 2008, Lyublinsky, as the titleholder of 53 Port Royal Drive, told Ioselev and his wife, Lyublinsky's grandmother, to vacate the premises so that he could sell it. Although Lyublinsky initially relented from this demand, due to his grandmother's illness, Ioselev testified that in April of 2009, some months after his wife died, his step-grandson forced him to move from the home.

At trial, Ioselev presented the testimony of his friends, Guennadi Kisselev, and Kisselev's wife, Lidiya Ryabinina. Kisselev testified that, when he spoke with Schilling about investment opportunities in Florida at her home, she turned to Ioselev and asked for his help

---

[5] Ioselev's second trip was three or four months after the first, and on that trip he traveled back to Palm Coast to check on the builder's progress and look into additional investment opportunities, although he did not locate any.

[6] As the jury completely resolved Ioselev's claims against Lyublinsky and his counterclaim against Ioselev, the Court focuses on the evidence surrounding Ioselev's dealings with Schilling and the services he provided to her. Although Ioselev testified that Lyublinsky promised to fulfill the promise Schilling made to him, and allow him to live at 53 Port Royal Drive for the rest of his life, the jury rejected this testimony, finding that Lyublinsky had not made this promise to Ioselev. Therefore, the Court does not recount these facts that are irrelevant to the specific performance claim against Schilling.

[7] This property was next door to 55 Port Royal Drive, where Schilling, her husband Paul and son Charlie would later live.

in investing and told Ioselev that if he would help her she would build a house for Ioselev and her mother to live in for the rest of Ioselev's life. Ryabinina testified similarly regarding the exchange between Ioselev and Schilling at Schilling's house in January of 2002, although neither she nor her husband were sure if they were at Schilling's house for a Russian New Year's celebration. As Ioselev did, Kisselev testified that several months after this conversation, Ioselev began traveling back and forth to Palm Coast, Florida to search for properties, builders, contractors, etc. on behalf of Schilling for investment purposes.

Ioselev also presented the deposition testimony of Igor Shames, his son-in-law. Shames testified that, at his fortieth birthday party in February of 2003, Schilling told him that she was building houses for her family members, including Ioselev and her mother, to live in, and Schilling also told him that they were going to live there forever, paying only living expenses such as utilities and taxes. When asked if he knew which house Schilling was talking about, Shames responded that it was the house close by Schilling's house in Palm Coast.

Schilling does not dispute that she purchased properties in Palm Coast, Florida, for investment purposes at Ioselev's insistence. However, she testified that she never made any promises to Ioselev or agreed to compensate him for his efforts. Schilling also testified that she authorized Ioselev to purchase the five properties for her, and he did so, but she did not authorize him to enter into agreements with any builders to develop the properties. Indeed, Schilling testified that she built the home on the 119 Boulder Drive property without Ioselev's assistance. Additionally, Schilling testified that she transferred all of her properties except 119 Boulder Rock to her son, Lyublinsky, in 2003 at Ioselev's urging, because she

did not have the money to build houses on those properties.[8] Subsequent to these transfers, in 2006, Schilling moved to Palm Coast and bought the house at 55 Port Royal Drive. At that time, the Ioselevs were living in the house next door, 53 Port Royal Drive, which had been built the year before.

The circumstances surrounding the construction of the home at 53 Port Royal Drive were the basis of Lyublinsky's counterclaim against Ioselev for breach of fiduciary duty. Lyublinsky testified that he did not make any promises to Ioselev regarding a life estate nor did Ioselev mention that his mother had made such a promise. Lyublinsky further explained that Ioselev insisted on obtaining power of attorney for Lyublinsky so that he could make the necessary arrangements for building on a separate property, 144 London Drive, but then negotiated a contract to build a home on 53 Port Royal Drive against Lyublinsky's wishes and without Lyublinsky's knowledge or consent. Lyublinsky and his wife, Anastasia Lyublinsky, testified that they reimbursed Ioselev for any expenses he incurred for managing 144 London Drive in cash, or Lyublinsky gave Ioselev signed checks when such a payment was required. After Ioselev vacated 53 Port Royal Drive following his wife's death, Lyublinsky rented the property and continues to do so today.

After considering all the evidence, testimony, and the arguments of the attorneys, the jury found that Ioselev had proven by the greater weight of the evidence that Ioselev and Schilling entered into the alleged contract for a life estate in a house in Florida in exchange for Ioselev's assistance with Schilling's real estate investments, that he provided such

---

[8] Ms. Schilling ultimately sold the 119 Boulder Rock property in January of 2005.

assistance, and Schilling failed to do what the contract required her to do. See Verdict at 1-2. As to Lyublinsky, the jury found that he and Ioselev did not enter into a contract. See id. at 2. With respect to Ioselev's promissory estoppel claim, as to both Schilling and Lyublinsky, the jury found that Ioselev did not prove by clear and convincing evidence that either Defendant promised Ioselev a life estate in a house in Florida in exchange for his assistance. See id. at 3, 5. As to the unjust enrichment claim, the jury found that Ioselev gave a benefit to both Schilling and Lyublinsky, that they both knew of and accepted or retained the benefit, and that they should in fairness be required to pay for the benefit, but found that Schilling should pay zero dollars while Lyublinsky should pay $28,900. See id. at 6-8. Lastly, the jury found that Schilling did not convert Ioselev's personal property, and found in favor of Lyublinsky as to his counterclaim for breach of fiduciary duty against Ioselev in the amount of $28,350. See id. at 9-10.

As the jury has now resolved the legal claims in this action, the Court must make findings of fact and conclusions of law as to Ioselev's equitable claims to the extent that the Verdict did not resolve those claims. In doing so, the Court recognizes that "[i]t is well settled that where claims at law and in equity are joined and the legal claims are tried separately by a jury, the jury's verdict operates as a finding of fact binding on the trial court in its determination of the equitable claims." Dybczak v. Tuskegee Inst., 737 F.2d 1524, 1526-27 (11th Cir. 1984). This includes not only those facts specifically found by the jury, but also those findings that the jury must necessarily have made in order to render its verdict. Williams v. City of Valdosta, 689 F.2d 964, 976 (11th Cir. 1982). Thus, "to the extent that the legal and equitable issues overlap, the court when sitting in equity will be

bound by the jury's prior determination of the legal issues." Id. at 976 n.11. Following the jury's verdict, the Court held a telephonic status conference at which both parties agreed, through counsel, that the only issue remaining for the court to determine was whether to grant specific performance. See Clerk's Minutes (Doc. No. 184). [9]

## III. Findings of Fact

The greater weight of the evidence presented in this action establishes the following: In January of 2002, Schilling entered into an oral agreement with Ioselev in which she agreed to give him a life estate in a house in Florida in exchange for Ioselev's assistance in acquiring, repairing, and maintaining real estate investment property. At the time of the agreement, Schilling owned no property in Florida. In their oral agreement, neither Schilling nor Ioselev specified a particular piece of property in which Ioselev would have a life estate nor a time frame for acquiring such property. Ioselev immediately began performing under this agreement by obtaining his real estate license in New Jersey, traveling to Palm Coast, Florida between 2002 and 2003, locating properties suitable for purchase, and negotiating purchase agreements. With Schilling's authorization, Ioselev ultimately purchased undeveloped lots on her behalf at the following addresses: 39 Pheasant Drive, 65 Pilgrim Drive, 67 Pilgrim Drive, 53 Port Royal Drive, and 119 Boulder Rock Drive. See Plaintiff's Exhibits 1, 3, 7, 9, 131. Ioselev was also able to enter into a contract on Schilling's behalf

---

[9] Although the claim of promissory estoppel is an equitable one, and therefore the jury's findings as to this claim are advisory, see Rule 39(c), the Court sees no reason to depart from the jury's findings based upon its own assessment that the evidence presents no reason to alter the jury's findings, nor did the parties argue for such action. Accordingly, the Court adopts the jury's findings as to the promissory estoppel claim as its own. See generally Banco Industrial de Venezuela, C.A. v. Credit Suisse, 99 F.3d 1045 (11th Cir. 1996) (finding no error in district court's submission of both legal and equitable issues to the jury and adoption of jury's advisory findings as to the equitable defenses).

with a builder, Mercedes Homes, to build a home on 119 Boulder Rock Drive.  See Plaintiff's Exhibit 65.

In the spring of 2003, Schilling transferred title to all of her properties, except 119 Boulder Rock Drive, to her son Lyublinsky.  See Plaintiff's Exhibits 96, 97, 99.  Schilling ultimately sold the 119 Boulder Rock Property in January of 2005.  Some time after Lyublinksy obtained title to the undeveloped lot at 53 Port Royal Drive, he gave Ioselev power of attorney.  In December of 2003, Ioselev used Lyublinsky's power of attorney, without Lyublinsky's knowledge or consent, to negotiate a contract with Mercedes Homes for the construction of a home on 53 Port Royal Drive.  See Defendant's Exhibits 18-20.  The builder completed construction on the home in 2005, and Ioselev and his wife moved into it in February of 2006.  Later that same year, Schilling moved to Palm Coast and bought the house next door, 55 Port Royal Drive.  Following the death of Ioselev's wife, in April of 2009, Lyublinsky demanded that Ioselev move out of the home at 53 Port Royal Drive and began renting the property.

**IV.   Applicable Law**

Specific performance is an equitable remedy which may be awarded by the Court alone.  See Invego Auto Parts, Inc. v. Rodriguez, 34 So. 3d 103, 104 (Fla. 3d DCA 2010).  Under Florida law, a court may, in its discretion, award specific performance if "1) the plaintiff is clearly entitled to [specific performance], 2) there is no adequate remedy at law, and 3) the judge believes that justice requires it."  Id. (quoting Castigliano v. O'Connor, 911 So. 2d 145, 148 (Fla. 3d DCA 2005)).  Pursuant to Florida Statute section 725.01, commonly referred to as the "statute of frauds", a contract to convey an interest in land must be in

writing, signed by the party to be charged. See Fla. Stat. § 725.01; Cavallaro v. Stratford Homes, Inc., 784 So. 2d 619, 621 (Fla. 5th DCA 2001). However, when equitable relief is sought, partial performance will excuse the absence of a writing and allow a plaintiff to remove an oral contract from the effect of the statute of frauds. Miller v. Murray, 68 So. 2d 594, 596 (Fla. 1953). To fall within this exception, a plaintiff must "prove the contract as alleged in his complaint by competent and satisfactory proof which must be clear, definite and certain." Id.; see also Invego Auto Parts, Inc., 34 So. 3d at 104; Denton v. Good Way Oil 902 Corp., 48 So. 3d 103, 108 (Fla. 4th DCA 2010). Additionally, the plaintiff must also prove "payment of all or part of the consideration, whether it be in money or in services; possession by the alleged vendee; and the making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor—or in the absence of improvements, the proof of such facts as would make the transaction a fraud upon the purchaser if it were not enforced." Miller, 68 So. 2d at 596. Regardless of the other factors which might compel specific performance, such as the payment of purchase money, building a house, leaving home to render services to manage the property, "there must always be the indispensable element of [p]ossession of the premises on the part of the impending grantee. . . Possession is the one common denominator in all the cases. If there is no possession given, the oral contract to convey is not enforceable, regardless of the other considerations aforesaid." Avery v. Marine Bank & Trust Co., 216 So. 2d 251, 253-54 (Fla. 2d DCA 1968). Because specific performance is an equitable remedy which can be awarded only when "the plaintiff is clearly entitled to it," the Florida Supreme Court has cautioned that if a plaintiff fails to show the existence of a contract by way of proof that is

clear, definite, and certain, "the trial court has no discretion to award specific performance." Invego Auto Parts, Inc., 34 So. 3d at 104-05 (quotation omitted).

## V.     Conclusions of Law

Upon consideration of the evidence presented, the Court concludes that Ioselev has not met the high burden of showing that he is entitled to equitable relief such that the Court should exercise its discretion to grant specific performance in this case.  Initially the Court determines that Ioselev has failed to establish part performance such that his claim for specific performance is not barred by the statute of frauds.  Ioselev has not proven by competent and satisfactory proof which is clear, definite and certain that the contract as alleged in his Complaint existed.  Although the jury found by the greater weight of the evidence that Schilling agreed to give Ioselev a life estate in a house in Florida in exchange for his services, they reached the opposite conclusion when asked whether Ioselev established the existence of such a promise by clear and convincing evidence. In evaluating the facts relating to Ioselev's promissory estoppel claim, the jury specifically concluded that Ioselev did not prove "[t]hat Irina Schilling promised Boris Ioselev a life estate in a house in Florida in exchange for Mr. Ioselev's assistance in developing real estate in Florida" by clear and convincing evidence, the standard which is comparable to the clear, definite and certain standard required for specific performance. See Verdict at 3; Miller, 68 So. 2d at 596.  The Court on its own independent review of the evidence similarly concludes that Ioselev failed to prove the existence of a contract by the more exacting standard of proof applicable to his equitable claim.  See Denton, 48 So. 3d at 108 (affirming trial court's denial of specific performance because the jury had been instructed on a lesser standard of proof and the

court found the plaintiff had not met the higher burden).

Even if Ioselev had proven that Schilling promised to give him a life estate in a property in Florida, such a promise is not one that would qualify as a contract enforceable by the remedy of specific performance. "Specific performance will not be enforced when the contract is not definite and certain as to essential terms and conditions and is incapable of being made so by the aid of legal presumptions or evidence of established customs." Tumulty v. Severdija, 233 So. 2d 837, 839-40 (Fla. 3d DCA 1970). The problem with Ioselev's claim for specific performance is that it does not relate to any specific property. See Celano v. Dlabal, 591 So. 2d 653, 655 (Fla. 1st DCA 1991) (finding that plaintiff failed to prove contract where it was not even clear how much of the property was intended to be conveyed). Indeed, Schilling did not own any property in Florida at the time the agreement was made, and she is only alleged to have promised to give Ioselev a life estate in a property in Florida. Without the identification of the property at issue, the terms of the alleged contract are entirely too vague to merit enforcement by specific performance.

The deficiency in the terms of the alleged agreement becomes quite obvious (and perhaps equally troubling) when one considers the history of this action. In his Complaint and at trial Ioselev asserted that he was entitled to a life estate in the home at 53 Port Royal Drive. However, in his proposed findings of fact, Ioselev has abandoned any claim to 53 Port Royal Drive, and instead, relying on the same promise alleged in the Complaint, seeks specific performance granting him a life estate in the home at 55 Port Royal Drive. See Plaintiff's Proposed Findings at 4. This is perhaps because 55 Port Royal Drive is the only Florida property Schilling currently owns. As such, in his proposed findings, Ioselev

13

contends that the Court should find him entitled to a life estate in that property. Id. He makes this argument despite the fact that he played no role in Schilling's purchase of 55 Port Royal Drive, and despite the fact that Schilling did not purchase 55 Port Royal Drive until late 2006, well after Ioselev had engaged a builder to build the home on 53 Port Royal Drive and had moved into 53 Port Royal Drive. As one of the essential terms of the alleged contract—the property that Schilling would convey—was undefined from the outset, the oral agreement between Ioselev and Schilling is not enforceable by specific performance. "The [C]ourt will not make a new or different contract for the parties." Tumulty, 233 So. 2d at 839. Therefore, Ioselev cannot satisfy the first element of the part performance exception to the statute of frauds because he has not proved the existence of a contract with clear, definite terms by clear and definite proof.

In addition to his inability to establish a contract by clear and definite proof, Ioselev cannot satisfy the possession element of the part performance exception to remove his contract from the statute of frauds.[10] With regard to 53 Port Royal Drive, Ioselev did present

---

[10]   The Court notes that the purpose of the part performance doctrine is to prevent the use of the Statute of Frauds to defraud another into relying on an unenforceable oral agreement, to make improvements to the property, payments towards the purchase price, undertaking services that are not capable of adequate measurement and compensation, or other equivalent actions. See Avery, 216 So. 2d at 251. As one Florida district court of appeal has explained:

> It is well established in Florida that part performance will remove an oral contract from the statute of frauds and enable it to be specifically enforced in equity. This part performance doctrine ensures that the statute of frauds cannot itself become an instrumentality of fraud. "So if a man agrees to sell his property to another, whom he places in possession and from whom he accepts part of the purchase price, he cannot avail himself of the statute of frauds to defeat a suit for specific performance, for if he is successful he will have committed a fraud upon the buyer by at once benefitting from the agreement and escaping responsibility under it.

Celano, 591 So. 2d at 655-56. Nothing in the evidence in this case suggests that such a fraud has been attempted or perpetrated. Instead, the facts at most suggest that either Schilling made an incomplete

evidence that he made improvements to the property and that he took possession of that property from at the earliest 2005 (when construction of the home was completed). However, he presented no evidence that he and Schilling entered into an agreement with him as to that specific property much less that Schilling put him in possession of that property. Indeed, the evidence affirmatively establishes that, as of 2005, when Ioselev took possession of the property, Schilling had no interest or title to the property having deeded it to Lyublinsky in 2003. Thus, Ioselev failed to show that Schilling placed him in possession of 53 Port Royal Drive. See Avery, 216 So. 2d at 253-54. As to 55 Port Royal Drive, Ioselev presented no evidence at trial that any of the parties ever contemplated Ioselev having any interest whatsoever in 55 Port Royal Drive at any point prior to this litigation. Moreover, he never resided in or otherwise possessed that property. Therefore, Ioselev cannot show—as he must to establish the claimed interest in real property—that Schilling placed him in possession of that property. See id. Because Ioselev has failed to satisfy the part performance exception to the statute of frauds, he has not shown that he is clearly entitled to the remedy of specific performance.

Finally, the Court observes that, even if Ioselev had made a sufficient showing of the existence of a contract to remove his oral agreement from the statute of frauds, he failed to show that he is without an adequate remedy at law or that justice requires specific performance. Ioselev was able to assert a claim for unjust enrichment to recover the value

---

agreement to provide an interest in a yet-to-be purchased property or she intended to allow her mother and stepfather to live in one of her investment properties but was financially unable to do so. Neither scenario is consistent with an oral agreement to convey an interest in real property pursuant to the part performance doctrine.

15

of the services he provided Schilling in locating and managing properties for her.  Although the jury ultimately found that Schilling did not have to pay Ioselev any money, the fact that he did not obtain a monetary judgment in his favor does not negate the adequacy of his legal remedy.  See generally McElrath v. ABN AMRO Mortg. Group, Inc., No. 11-62216-CIV, 2012 WL 463893, at *8 (S.D. Fla. Feb. 13, 2012) ("To be 'adequate,' the remedy at law need not necessarily be successful." (citing Justice v. United States, 6 F.3d 1474, 1482 n.16 (11th Cir. 1993))).

In this action, Ioselev alleged an agreement for a life estate in any property, and has demonstrated through these proceedings that a life estate in any property would satisfy what he contends was Schilling's end of the bargain.  Thus, this contract does not involve unique property such that the only remedy to the contract's breach is specific performance.  See Henry v. Ecker, 415 So. 2d 137, 140 (Fla. 5th DCA 1982).  The jury found that the value of the benefit Ioselev conveyed to Schilling over the course of the real estate transactions was $0.  Although Ioselev and his wife moved to Palm Coast, the evidence at trial reflects that they did so long after Schilling had transferred ownership of 53 Port Royal Drive to Lyublinsky, and that Lyublinsky made no promises to Ioselev.  Further, Ioselev presented no evidence that they moved to Florida expecting to live at 55 Port Royal Drive, a property that Schilling had not even purchased.  In light of these facts, the Court does not find that justice demands that Schilling be required to provide Ioselev with a place to live, free and clear, for the rest of his life, in either a property that she did not own when the alleged promise was made, or when Ioselev took possession of it, or in a property purchased four years after making the alleged agreement and which Ioselev never possessed.

It is unfortunate that this family dispute resulted in tumultuous and protracted litigation, and that, based on the jury's findings, Ioselev provided benefits to Schilling for which he will not receive any further recompense. However, the Florida legislature has seen fit to require that all contracts for the sale or transfer of land must be in writing. The party relying on the exception to this requirement must clearly establish what the promise was, that he has complied with his end of the deal, and that he possesses the property. These requirements unequivocally demonstrate the grantor or promisor's intentions. See Avery, 216 So. 2d at 255 ("Undoubtedly, this exception has been recognized under such circumstances because the acts are consistent with the existence of a [c]ontractual relationship.") Those circumstances are simply not met in this case and accordingly, the Court has no discretion to order specific performance in this action. See Palm Lake Partners II, LLC v. C & C Powerline, Inc., 38 So. 3d 844, 851 n.9 (Fla. 1st DCA 2010) ("The granting of specific performance rests largely in the discretion of the [judge] but the right to exercise this discretion does not extend to the power or authority to contravene the legal requirements which must exist to give a litigant grounds upon which he may invoke the remedy." (internal quotation and marks omitted)). Ioselev had an opportunity to recover the value of his services based on his unjust enrichment claim, and the jury determined what that value was. He therefore had an adequate remedy at law and justice does not require any further action. Even if the Court had discretion to grant specific performance, the facts presented here simply do not warrant a grant of such relief.

**VI.   Conclusion**

In accordance with the foregoing and based on these findings of fact and conclusions of law, the undersigned concludes that Plaintiff Boris Ioselev has failed to prove by competent and satisfactory proof which is clear, definite and certain that Defendant Irina Schilling entered into an oral agreement to transfer a life estate in real property to him and that he is entitled to specific performance. Even if he had carried this heavy burden, the Court concludes that the facts of this case do not, in the Court's discretion, warrant the remedy of specific performance. Additionally, in accordance with the jury's findings of fact and after independent review of the evidence, the Court finds that Plaintiff Boris Ioselev has failed to prove his claim of promissory estoppel by clear and convincing evidence. As such, the Court will enter judgment in favor of Defendant Irina Schilling and against Plaintiff Boris Ioselev on Counts One and Four of the First Amended Complaint.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of March, 2014.

*[signature]*
**MARCIA MORALES HOWARD**
United States District Judge

lc16

Copies to:

Counsel of Record